CALDWELL *vs* WALLACE.

1. A deed made between parties in another State, under a contract contemplating no final execution or performance, in this State, must be controlled in its effect, (as to validity against the lien of strangers upon the property conveyed,) in respect to its proof or acknowledgment and registration, by the laws of the State where executed.

2. Thus, where slaves, at the suit of a creditor, had been attached in this State, and trespass was brought against the sheriff, and a bill of sale was relied on, made by the debtor to the plaintiff, in the State of Tennessee; and it appeared that the bill of sale had not been proved or acknowledged and recorded, within twelve months from its date, as required by the statutes of Tennessee—it was held that the bill of sale was void and of non-effect, as against the lien acquired in this State; and so no trespass lay against the sheriff.

Error to the Circuit Court of St. Clair.

Samuel Caldwell, on the fifth day of July, one thousand eight hundred and thirty, sued out a writ in trespass, *de bonis asportatis*, against John S. Edwards, for taking and selling certain slaves, the property of the plaintiff. The record did not exhibit the nature of the pleas relied on, but showed a verdict and judgment in favor of the defendant; on which the defendant took a writ of error to this Court.

A bill of exceptions, taken in the progress of the trial, disclosed the following circumstances — the plaintiff, to show title in himself to the property, for the taking of which the action was brought, produced a deed of trust, or mortgage, made by Joseph

Floyd to the plaintiff, and dated the third day of
August, one thousand eight hundred and twenty-nine:
This deed was as follows :

"This indenture, made and entered into this third
day of August, one thousand eight hundred and twen-
ty-nine. Samuel Caldwell, of the one part, and Jo-
seph Floyd, of the other part, all of the County of
Franklin and State of Tennessee; whereas the said
Samuel Caldwell, has, at the special instance and re-
quest of him, the said Joseph Floyd, hath become
bound, together with him, unto Mark Hutchins, and
has paid the said Hutchins the sum of seventy-one
dollars; and also to the Bank of the State, at the
agency in Winchester, for forty dollars; also a judg-
ment, paid to James Oliver, constable, in and for said
County, the sum of forty-one dollars; also security
to an appeal bond, from the County Court to the Su-
preme Court of the State, for fifty dollars; also, to
the firm of White & Wilson, for thirty dollars; and
also, four other executions, which the said Caldwell
holds against the said Floyd, for, in all, one hundred
and twenty-three dollars and seventy-five cents;
including cost and interest; also one other claim,
to the said Mark Hutchins, for two hundred dollars;
including cost of suit; also, to G. B. Caldwell, for
seventy dollars and fifty cents—which same monies,
being the proper debts of him, the said Joseph Floyd;
and the said Samuel Caldwell, in the above recited
debts, being only a security for the said Joseph
Floyd; and, at his request, as aforesaid, he the said
Joseph Floyd, to counter-secure him, the said Sa-
muel Caldwell, hath agreed to convey to him all the

5 s & p.            40

right and title to a negro woman, named Cherry, aged twenty-eight or thirty years; also a boy, named Alfred, about twelve years old, and Mike, a boy, two years old; and the said Cherry's youngest child, without name: provided always, and this present deed of trust is upon this condition, that if the said Joseph Floyd, his heirs, executors or administrators, shall and will well and truly pay or cause to be paid, the above recited debts, with the interest and costs thereon, according to their conditions, and in full discharge and satisfaction of the above recited debts; and also, from time to time, and at all times hereafter, shall and do well and sufficiently save, harmless, and keep indemnified, the aforesaid Samuel Caldwell, his heirs, executors, or administrators, and every of them, and their, and each and every of their goods and chattels, lands and tenements, of, and from all manner of actions, suits, troubles, charges, judgments, executions, damages and demands, whatsoever, that shall or may, at any time hereafter accrue or happen unto, or arise or be brought or prosecuted against the said Samuel Caldwell, his heirs, executors or administrators, any or either of them, upon the before recited debt; or of, for or by, reason of his, the said Samuel Caldwell, becoming bound, in the before recited debts—that then, and from thenceforth, this present indenture witnesseth, and every article, covenant clause and condition, in the same contained, and the property which is before named, the right of which is conveyed, shall cease, determine, and be utterly void and of no effect: any thing herein, to the contrary thereof, in any wise, notwithstanding—as the true intent and

meaning of the deed of trust is, to keep safe, and harmless from all expenses, interest, costs and damages, the said Samuel Caldwell, or his heirs, or executors or administrators, may be subjected to, by means of his said securityship, in the before recited debts: The said Joseph Floyd doth hereby authorise and empower the said Samuel Caldwell, his heirs, executors or administrators, to dispose of the before mentioned property, at public vendue, to wit, on the first Monday in March, one thousand eight hundred and thirty, at the court-house, in the town of Winchester, County and State aforesaid; and, on such sale being made, to make and execute to the purchaser or purchasers, his, her or their heirs or assigns, forever, a good and sufficient title to the before named negroes, in the law, pursuant to the statutes made and provided in such cases; rendering the overplus monies, if any there be, to the said Joseph Floyd, his heirs, executors or administrators, after deducting the costs and charges of such sale or vendue, as aforesaid.

"In witness whereof, I have hereunto set my hand and seal, this day and date first above written.

"Attest. "JOS. FLOYD. [L. S.]

"John Gray. Wm. Thompson."

The said deed was proved by the testimony of one of the subscribing witnesses, John Gray; and the same was read to the jury, and was made in Franklin County, Tennessee. The plaintiff, also, for the purpose of proving title in himself, to the property, for the taking of which, this action was brought, produced a bill of sale, in the words and figures following:

"Received of Samuel Caldwell, of the County of Franklin, and State of Tennessee, eight hundred and fifty dollars, in full consideration for four negroes, namely, a woman, named Cherry, about thirty years of age; and Alfred, a boy, twelve or thirteen years old; Michael, a boy, about two years old, and the other child, about six months old—all of a black complexion—sold by me, so the said Caldwell; all which negro slaves, I warrant to be healthy and sound; and do further warrant that they are slaves, and also warrant the right and title of said negroes, as slaves, to the said Caldwell and his legal representatives, against the lawful claims of all persons.

"Witness, my hand and seal this first day of February, one thousand eight hundred and thirty.

"Attest.                          "JOS. FLOYD.  [L. S.]
  "James Burrell.
  "Nath'l Hunt."

This last, was also proved by the testimony of one of the subscribing witnesses, Nath'l Hunt, and read in evidence to the jury.   Upon the back of the said bill of sale, was a probate and certificate of registration, in the words and figures following:

"State of Tennessee,    ⎰
  "Franklin County.  ⎱   "County Court,
                          "May Term, 1830.

Then the within bill of sale, from Joseph Floyd to Samuel Caldwell, for four negroes, therein named, was duly proven in open Court, by the oath of Nathaniel Hunt, a subscribing witness thereto, and ordered to be registered.   Let it be registered.

                    "E. Russell, M. C., by
                       "Wm. T. May, D. C."

"State of Tennessee, ⎱ "October the 25th, 1831.
  "Franklin County. ⎰

" Then the within bill of sale, from Joseph Floyd
to Samuel Caldwell, with the certificate thereon,
was duly registered in my office, in book M.

"Solomon Wagoner, Reg'st,

"by his deputy, Joseph Klepper."

The plaintiff then proved by the subscribing wit-
nesses, John Gray and Joseph Floyd, that at the
time of the making of the deed of trust, or mortgage,
the property mentioned in the same, was delivered
into his possession; that it remained in his posses-
sion until the latter part of said month of August,
one thousand eight hundred and twenty-nine, when
the said property was taken out of the possession of
the plaintiff, by the said Joseph Floyd, when the
said plaintiff was from home, and without his know-
ledge, or consent and brought from the said County of
Franklin, to the County of St. Clair, in this State; that
said Joseph Floyd left the said property in the pos-
session of one Moore, in Alabama, and returned, him-
self, to the State of Tennessee; and that the said bill
of sale was executed in the State of Tennessee, at
the time it bears date.  He also proved, that the
consideration of the bill of sale was eight hundred
and fifty dollars, being the payment of the several
sums mentioned in the deed of trust, and the pay-
ment of other debts of said Floyd, which were prov-
ed, making the whole the sum of eight hundred and
fifty dollars: that at the time the bill of sale was made,
the property was with said said Moore in Alabama.

The defendant proved by an exemplification of a

record, from the County of Franklin, Tennessee, that he recovered a judgment against the said Joseph Floyd, on the twenty-seventh day of August, one thousand eight hundred and twenty-nine, for between one hundred and eighty and ninety dollars.

The record shewed, that an execution had been issued on said judgment, and returned *nulla bona*, soon after the property had been removed to this State, by the said Joseph Floyd. The defendant also proved that a short time before the property was brought to this State, a certain Moore of Tennessee, hired the said property of the said Floyd, and paid him the hire. He also proved by several witnesses, (the neighbors of the said Floyd and plaintiff,) that they had seen the said property in the possession of the said Floyd, up to about the time Floyd brought the property to this State; and that no claim was ever heard to be made to it.

It was also proved, by the said exemplification, that the same was obtained on the tenth day of February, one thousand eight hundred and thirty; that on the said exemplification, he sued out an attachment in this State, against the estate of the said Floyd, on the sixteenth day of February, one thousand eight hundred and thirty, and the said attachment was levied on the property mentioned in the bill of sale, by the defendant, as sheriff of St. Clair; the taking of which property, under the said attachment, was the trespass complained of in this suit.

He also proved, that before, and at the time Floyd removed the property to Alabama, he lived on the plaintiff's plantation, but a few hundred yards from plaintiff's house; that after Floyd returned from

Alabama he lived in the house with the plaintiff, and that they were on terms of friendship; and that said slaves remained in the possession of said Moore, until the levying of said attachment.

The plaintiff then proved, by the said Joseph Floyd, that the hiring spoken of by the witness for the defendant, was before the making of the said deed of trust; whereupon, the plaintiff, by his counsel, requested the Court to give the jury the following instructions.

1st. That if the trespass complained of was committed before the time required by the laws of Tennessee, for the registration of deeds, &c., that no subsequent neglect to record the deed, could defeat his right to recover for the trespass so committed.

2dly. That if the property conveyed by the bill of sale, was, at the time of making, in the State of Alabama, then the laws of Tennessee, where the bill of sale was executed, in relation to the registration of the same, did not apply; but that the laws of Alabama, where the property then was, should govern.

3dly. That although the bill of sale was absolute on its face, yet, if the negroes conveyed, were in Alabama at the time of the conveyance, the distance between the place of executing the deed, and where the negroes then were, would be a circumstance proper to be considered of, by the jury, in explanation, why the immediate possession of the negroes did not accompany the bill of sale: all of which instructions the Court refused to give.

The plaintiff in error now came, and said, that in the record and proceedings in said cause, there was

error, in this, that the Court declined to give the instructions prayed below.

*Peck*, for the plaintiff in error. If it be determined, that the operation of the bill of sale, (under the circumstances of this case,) must be controlled by the laws of Tennessee—yet, we contend, the first requested instruction should have been given. The bill of sale vested a good and operative title immediately; and, at most, that title was only liable to be defeated, by a subsequent neglect to have the bill of sale recorded.—4 Haywood's Rep. 4.

The record and the facts disclosed in the bill of exceptions shew, that the trespass had not only been committed, but the suit for that trespass actually brought before the time for registering the bill of sale had transpired. A subsequent neglect, therefore, by the plaintiff, to record the bill of sale, could not defeat his right to recover damages for a trespass committed, when his title was indisputable.—*Putnam* vs *Dutch*, 8 Mass. 287, 291.

But, we insist that the laws of Tennessee can have no possible influence, either in determining or controlling the rights of the plaintiff, under the bill of sale. The property conveyed, was, at the time of the sale, without the jurisdiction of those laws—they had no legal or binding operation over the place where the property was. The *lex domicilii*, as applied to the distribution of personal property, can not govern this case.—2 Kent's Com. 344–5.

By refusing the third instruction requested, the Court, in effect said to the jury, that the want of immediate and absolute possession, in the plaintiff, on

receiving the bill of sale, was presumtive evidence of fraud; and the fact of the impossibility of giving such possession was not proper evidence to be taken into consideration by the jury, to rebut that presumption.

In this, the Court seems to have forgotten or disregarded the decisions of this Court, in the cases of *Hobbs* vs *Bibb*, and *Moore* vs *Ayres*, 2 Stewart 54, 336.

If personal property can be sold, when, (from circumstances, such as are disclosed in this case,) the immediate and positive possession can not pass from hand to hand, (and that it can, there is no shadow of a doubt,) then most certainly, the circumstances which prevented such delivery of possession, (if the sale should ever be impeached for that cause,) would not only be proper, but it would seem almost conclusive evidence in support of the sale,—*Land, &c.* vs *Jeffries*, 5 Randolph, 216–17; *Portland Bank* vs *Stacey et al.* 4 Mass, 661; *Putnam* vs *Dutch*, 8 Mass. 291.

*W. H. Campbell* and *Shortridge*, contra.

SAFFOLD, J.—The plaintiff in error, who was plaintiff below, brought an action of trespass, *de bonis*, &c. against the defendant, in the Circuit Court of St. Clair, for taking and carrying away certain slaves, the property of the plaintiff. The suit was commenced the fifth July, eighteen hundred and thirty. A verdict and judgment having been obtained by the defendant, the plaintiff excepted to

5 s. & p.         41

the opinion of the Court. This opinion alone is now the subject of revision.

The bill of exceptions shows, that on the trial, the plaintiff read in evidence a deed of mortgage, dated the third of August, eighteen hundred and twenty-nine, for the slaves, executed by one Joseph Floyd, in the State of Tennessee. He also proved by the subscribing witnesses to the deed, that when it was executed, the property was delivered into his possession, and so remained until the latter part of August, eighteen hundred and twenty-nine, when it was without the knowledge or consent of the plaintiff, and during his absence from home, taken by said Floyd, from Franklin county, Tennessee, to the county of St. Clair, in this State, and there put in the possession of a Mr. Moore. The mortgage appears to have been proven on the trial; but there is no shewing of its ever having been recorded.

The plaintiff also produced and proved a bill of sale of the said negroes from Floyd to himself, made in the county of Franklin, Tennessee, on the first of February, eighteen hundred and thirty, in consideration of eight hundred and fifty dollars. The bill of sale purports to have been proved in said Franklin County Court, by a certificate signed " E. Russell, M. C. by Wm. T. May, D. C," at May term, eighteen hundred and thirty. It also purports to have been registered in the same County, on the twenty-fifth of October, eighteen hundred and thirty-one, by a certificate merely, signed, " Solomon Wagoner, Regist. by his deputy, Joseph Klepper." The plaintiff also proved, that the eight hundred and fifty dollars, the consideration of the bill of sale, was the actual

payment of the several sums mentioned in the deed of trust, and other debts of said Floyd, making that amount. He also proved, that at the time the bill of sale was made, the property was in the possession of said Moore, in this State, where it remained until taken into possession by the defendant, as hereinafter mentioned.

Then the defendant introduced, as evidence, an exemplification of a record from the said county of Franklin, Tennessee, shewing a judgment in his favor, recovered against the said Floyd, on the twentieth of August, eighteen hundred and twenty-nine, for between one hundred and eighty & ninety dollars; also, that an execution had issued on said judgment, and had been returned *nulla bona*, soon after the property had been removed to this State, by said Floyd. The defendant further proved, that a short time before the property was brought to this State, a certain Mr. Moore of Tennessee, hired the same of said Floyd, and paid him the hire. He also proved by several witnesses, neighbors of Floyd and the plaintiff, that they had seen the same property in the possession of Floyd, up to about the time the latter brought it to this State, and that they never heard of any one having any claim on them. It also appeared that on the sixteenth day of February, eighteen hundred and thirty, the defendant sued out an attachment in this State, which was levied on the property, by the defendant, as sheriff of St. Clair county, which taking is the trespass complained of in this suit.

Under these circumstances, and some other proofs on both sides, which can not affect the principle of

this decision, the plaintiff moved the Court to instruct the jury as follows:

1. That if the trespass complained of was committed before the time required by the laws of Tennessee for the registration of deeds, no subsequent neglect to record this bill of sale, could defeat his right of action.

2. That if the property conveyed, was, at the time when the bill of sale was executed in this State, in that event, not the laws of Tennessee, respecting registration of such instruments, but the laws of this State should govern.

3. That although the bill of sale was absolute on its face, if the negroes were in this State when the conveyance was executed, the distance that they were off, was a circumstance proper to be considered by the jury in explanation why the *immediate possession* did not accompany the conveyance : all which the Court refused to give.

The refusal of the Court to instruct the jury, as requested, is the cause assigned for error.

In the progress of the trial below, no question appears to have been raised respecting the manner of establishing the law of Tennessee, regulating conveyances of this description, or the effect of the law within that State. It seems to have been proved there, or admitted to be, as it was here shewn from the printed volume, that the statute law of that State, in force at and before the execution of either of the conveyances mentioned in this record, required that all conveyances of slaves should be by deed, duly proved or acknowledged and recorded within twelve months after their dates; otherwise they

should be void to all intents and purposes; except as between the parties thereto, and others having notice thereof. It is not contended that either this mortgage, or bill of sale was so acknowledged, or proved, or recorded; or that the former has any validity as a conveyance. On the contrary, it is admitted, that the mortgage has ceased or failed in its operation, and that it was offered in evidence only to shew the consideration for the bill of sale, the execution of which was intended to supersede the other, and on which alone the plaintiff now relies to sustain his title.

The principle mainly contested in argument is, whether the plaintiff's title shall be determined according to the laws of Tennessee, where the bill of sale was made, and where the parties reside, or by the laws of this State, in which the property was, and where the suit was commenced. Here, slaves may be sold by deed or by parol; and if by deed, for a valuable consideration, registration is not necessary to the validity of the conveyance.

The plaintiff contends for the application of the *lex fori*—the defendant for *lex loci contractus*. As this aspect of the case is deemed sufficient, and most proper for its decision, I decline a particular examination of another feature of it, which would otherwise, require investigation, and is equally important in principle.

I allude to the question, whether, according to the laws of either State, or the common law, the sale of the slaves to the plaintiff, was sufficiently consummated by delivery, or any subsequent possession, to give it validity against the defendant, occupying the po-

sition, and claiming the protection due to a creditor or subsequent purchaser, receiving the prior possession, without notice of the previous sale.

If this inquiry was indispensable to this decision, some of the cases referred to in argument, and others, which I have examined, would be found to present a strange conflict of decision.—See *Lanfear* vs *Sumner;*[a] *Lamb* et al. vs *Durant;*[b] *Putnam* vs *Dutch;*[c] *Portland Bank* vs *Stacey* et al.[d]

But, on the question, whether the law of this State or of Tennessee, must govern and determine the effect of the plaintiff's title, the case of *Thompson* vs *Ketcham,*[e] may be noticed as an authority.— There, the defendant had executed his promissory note, in the Island of Jamaica; and when sued upon it, in New York, he set up infancy, as a defence. The Court held that he was bound to show, by the laws of Jamaica, that such a plea would constitute a good defence.

*Kent*, Chief Justice, in delivering the opinion, of the Court, remarks, that "the force and effect of the contract, must be determined from the contract itself, and not by proof *alunde*. The *lex loci* is to govern, unless the parties had in view a different place, *by the terms of the contract. Si partes alium in contrahendo locum respexerent.*"

Again, he says, "the defendant was bound to make out a valid defence, and it therefore lay with him, to show that his plea of infancy was good by the laws of Jamaica."

The same principle is maintained, in the case of *Powers* vs *Lynch.*[f] In that case, the Court decided,

that the indorser of a bill of exchange, drawn in a foreign country, and indorsed by one who has his residence there, is answerable only according to the laws of that country.

The language of the Court was, that, "it is a principle too well known and established, and founded upon reasons too obvious to require proof or illustration, that contracts are to be construed by the laws of the country where made, and that the respective rights and duties of the parties, are to be defined and enforced accordingly; provided it does not appear, from the nature of the contract, or from other facts, that in the contemplation of the parties, the performance of the contract has relation to the laws of another country."

For all the purposes of this question, I am of opinion the different States of this Union are to be viewed as countries, foreign to each other—no less so, than any others, however distant or unconnected by any confederacy.

In this case, the exception can not be sustained, on the ground, that either from the nature of the contract, or any other circumstances, the parties contemplated performance in this State; for, if the sale and purchase is not to be considered as having been fully executed and performed in Tennessee, the plaintiff's title to the slaves was defeated, by the creation of the lien upon them, by means of the the attachment, while the sale remained incomplete. If the contract contemplated no performance or final execution of the sale, in this State, then, of course, it must be construed and governed by the laws of Tennessee—where, for want of registra-

tion of the bill of sale, within the twelve months. the sale was void, as respects this defendant.

If, under circumstances, in all other respects the same, the sale had been made in this State, near the property purporting to be conveyed, it would, then, have been adjudged void, for the *non-delivery*, without any adequate excuse.

The principle is recognised by this Court, that attaching creditors, are to be considered as purchasers for a valuable considertion.—See *Lanfear* vs *Sumner*, before referred to.

It may be also noticed, that the last point of instruction requested by the plaintiff, had not a just application to the facts of the case, on which it was required. The request was, that the Court should instruct the jury, on the alleged cause or excuse, why the possession of the property did not *immediately* accompany the conveyance, which would presuppose that the possession had been taken by the plaintiff; but not immediately. From the record, it is shown, that five or six months elapsed, after the execution of the bill of sale, and after the levy of the attachment, before the institution of this suit; and that during this time, there was no possession taken or demanded by the plaintiff; nor does it appear, that he has had possession at any time.

Various other authorities maintain the same principle as those already quoted, respecting the *lex loci contractus*, as the governing rule of rights created under it. Among others, the case of *DeLobry* vs *Terrier*,[a] is fully in point. But the doctrine is conceived to be too well established, to require a more particular investigation.

[a] Har. & J. 220.

I am also of the opinion, that though at the time of the alleged trespass, the twelve months, within which the bill of sale was required to have been registered, had not expired; yet, in as much as it did expire, before the institution of this suit, by reason of which he had failed to perfect his title, afterwards, he was not entitled to sustain his action against one standing in the situation of the defendant—that is, in the place of a subsequent purchaser without notice.

The result of these views is, that there was no error in refusing the instruction, as requested in the Circuit Court—that they are all either informal in law, or such as might be regarded as abstract, in relation to this suit, under the circumstances. In this opinion, the Court are unanimous.

The judgment must be affirmed.